CHIEF JUSTICE TURNAGE
dissenting:
I concur in the dissent of Justice Fred J. Weber and respectfully state that there are further reasons why the majority of the Court has erred.
In view of the result the majority has reached subjecting Probation Officer Bennett to Brunsvold’s tort action for damages, I am more than somewhat puzzled, as I am certain the bench and bar will be, by that part of the majority opinion which states:
“It is clear that Risley was an agent of the court in accepting Brunsvold into the Montana State Prison. He acted in direct obedience to, and discharge of, the court’s sentencing order. Thus, he was an agent of the judiciary discharging ‘an official duty associated with judicial actions of the court.’ Section 2-9-112(2), MCA. As such, and to that extent, we affirm the District Court’s grant of summary judgment in Risle/s favor.”
What about Probation Officer Bennett?
Bennett also was acting “in direct obedience to, and discharge of, the court’s sentencing order.”
In sentencing Brunsvold, the District Court, upon deferring imposition of sentence or suspending his sentence, placed conditions upon his release from custody that included the requirement “that he violate no laws, federal, state, county, or city.” Further, “that he shall be under the jurisdiction of the Department of Institutions, Division of Adult Probation and Parole.”
From the record in this case, Probation Officer Bennett had to consider the following Brunsvold chronology, at least until his July 1983 petition for habeas corpus:
12-23-77 — Issuance of bad checks in Montana.
3-8-78 — Sentenced to three years (deferred) guilty plea. Criminal Case #1249-C, 7th Judicial District.
3-8-79 — Violation of conditions of deferred sentence reported.
*513 11-26-79 — Supplemental report of violation of conditions.
I-2-80 — Three-year deferred sentence revoked. Three-year sentence suspended.
6-27-80 — Violation of suspended sentence conditions reported.
8-27-80 — Three-year suspended sentence revoked. Given three-year sentence in prison with two years suspended.
5-12-81 — Brunsvold completes one year prison term. Requests travel permit to Idaho, to return 5-27-81. Does not return to Montana.
12-26-81 — Approximate date of allegation of issuance of bad checks in Idaho (#1).
3-15-82 — Approximate date of allegation of issuance of bad checks in Idaho (#2).
6-2-82 — Jim Bennett, probation officer, writes report recommending revocation of suspended sentence in Criminal Case #1249-C. He believes at this time that Brunsvold will have completed his suspended sentence on 7-25-82.
6-16-82 — Warrant issued for arrest of Brunsvold. $1000 bond set.
6-18-82 — Thirty days suspended sentence and contempt citation for Idaho bad check #2.
8/82 — Montana arrest warrant served in Idaho. Brunsvold is to appear before the Montana Court on 9-25-82.
9-15-82 — Brunsvold fails to appear.
II-24-82 — One-year suspended sentence and restitution for Idaho bad check #1.
12-14-82 — Richland County Attorney files affidavit and motion for leave to file information on Bail Jumping charge (Section 45-7-308). #1614.
1-4-83 — Arrest warrant issued in Idaho for violating terms of probation on bad check conviction.
2-4-83 — Letter sent to Richland County Attorney from the Court in Idaho informing them that the Idaho charge had been closed, and the bench warrant issued for Brunsvold’s arrest had been withdrawn.
2-28-83 — Plea bargain agreement filed on charges numbering 1249 (Montana bad check) and 1614 (bail jumping). Brunsvold agrees that he violated the conditions of his suspended sentence in #1249 and committed an offense in Idaho. Brunsvold pleads guilty to bail jumping.
3-23-83 — Judgment and sentence in both #1249 and #1614. Bail jumping gets two-year term in prison. To serve both that and two-year suspended sentence concurrently. Credit for serving one day and designated non-dangerous offender.
*514 3-17-83 — Imprisoned.
7/83 — Petition for Habeas Corpus hearing on grounds that Brunsvold had discharged all of his sentences prior to revocation.
9-1-83 — Habeas Corpus hearing. Brunsvold released.
Supervision of Brunsvold as a probationer is clearly a part of the judicial function, and Probation Officer Bennett, in carrying out this function, acts as an agent of the judiciary.
Bennett was acting as an agent of the court, as did Warden Risley in confining Brunsvold. There simply can be no distinction drawn between the acts of Risley and the acts of Bennett with relation to such acts being carried out as agents of the judiciary.
In bringing the role of the probation officer into proper perspective, the following statutes must be recognized:
“46-23-1001. Definitions. As used in this part, unless the context requires otherwise, the following definitions apply:
“(4) ‘Probation’ means the release by the court without imprisonment, except as otherwise provided by law, of a defendant found guilty of a crime upon verdict or plea, subject to conditions imposed by the court and subject to the supervision of the department upon direction of the court” [Emphasis added.]
Further recognition of probation as a part of the judicial function is found in the statutes relating to the Department of Corrections and Human Services (formerly the Department of Institutions):
“46-23-1002. Powers of the department. The department may:
“(3) adopt rules for the conduct of persons placed on parole or probation, except that the department may not make any rule conflicting with ... conditions of probation imposed by a court. [Emphasis added.]
“46-23-1011. Supervision on probation. (1) The department shall supervise persons during their probation period in accord with the conditions set by a court. [Emphasis added.]
“46-23-1013. Action of court after arrest. (1) Upon such arrest and detention, the probation and parole officer shall immediately notify the court with jurisdiction over such prisoner and shall submit in writing a report showing in what manner the defendant has violated the conditions of release. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing may be informal or summary.
*515 “(2) If the violation is established, the court may continue to revoke the probation or suspension of sentence and may require him to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.
“(3) If it shall appear that he has violated the provisions of his release, whether the time from the issuing of such warrant to the date of his arrest or any part of it shall be counted as time served on probation or suspended sentence shall be determined by the court.” [Emphasis added.]
Brunsvold, as the chronology noted, received his sentences by orders of the District Court; when his deferment of sentences and suspension of sentences were revoked, it was by order and sentence of the District Court; and, of course, his imprisonment in the Montana State Prison was by order and sentence of the District Court. The majority does not question that such were judicial acts. It was not Bennett that sentenced Brunsvold and caused his imprisonment in the Montana State Prison; it was the District Court. The part that Bennett played in that regard was as an agent of the judiciary.
In holding that Warden Risley is an agent of the court and Probation Officer Bennett is not an agent of the court, the majority is making a distinction without a difference.
The definition of agency that has been a part of our Code since 1895 should settle this question:
“28-10-101. Definitions of agent and agency. An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency.”
Both Risley and Bennett certainly represented the court in dealing with the third person Brunsvold. The fact that both of their paychecks are written by an executive branch of government and their appointments made by the executive branch of government has nothing to do with the fact that they, in their official capacities and with relation to Brunsvold and others similarly situated, represent the court in dealing with those third persons and they therefore are agents of the court.
From information obtained from the Montana Department of Corrections and Human Services, of which the Court could properly take judicial notice, there currently are approximately 3,436 individual active probation supervision cases and 592 parole cases in the state of Montana. There are currently 51 adult probation officers in Montana, and all of these cases are required to be supervised by *516 adult probation officers as agents of the court that imposed sentence in each of the cases. If Montana’s adult probation officers are personally subject to civil suit for errors in presentence or probation reports submitted to the District Court, whether the error is with or without substance, the prejudicial or not prejudicial to the defendant, it will certainly not make their difficult task easier.
Based upon § 2-9-112, MCA, and the statutes cited herein, as well as the precedent of Knutson v. State of Montana (1984), 211 Mont. 126, 683 P.2d 488, the decision of the District Court should be affirmed.